861 F.2d 719
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George CHAPMAN, A.J. Espisito, Peter Majoy, Sam Pisano, and
Harold Wright, Plaintiffs-Appellants,
v.
UNITED STEELWORKERS OF AMERICA, INTERNATIONAL UNION; United
Steelworkers of America, District 28; Leonard J.
Maher, Staff Representative; and Lake
Erie Dock Company, Defendants-Appellees.
 Nos. 87-4144, 88-3061.
 United States Court of Appeals, Sixth Circuit.
 Nov. 8, 1988.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs George Chapman, A.J. Espisito, Peter Majoy, Sam Pisano, and Harold Wright (appellants) appeal from the judgment of the district court dismissing their complaint brought under the Railway Labor Act, 45 U.S.C. Sec. 151 et. seq. (RLA) and the Labor Management Relations Act, 29 U.S.C. Sec. 141 et. seq. (LMRA).[1] Appellants challenge the district court's dismissal of their action. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * Appellants were employees of the Lake Erie Dock Company (Lake Erie) and members of the International United Steelworkers of America (USWA). Leonard J. Maher, a defendant-appellee in this case, is a staff representative of the USWA. During 1986, the appellants were employees under a collective bargaining agreement between Lake Erie and the USWA. The agreement ran through December 31, 1986 and provided inter alia for up to one year severance benefit. Negotiations toward a new contract were entered into on November 13 and December 11, 1986. No agreement was met. On December 18, 1986, Lake Erie sent a letter to Maher stating that it considered negotiations to be at an impasse. After receiving this letter, Maher failed to seek the services of the Mediation Board within ten days. On December 30, 1986, Lake Erie gave notice to the USWA that it would impose new work conditions as of January 1, 1987.[2] Under the new conditions, the appellants lost their seniority and their right to severance benefits. Subsequently, Lake Erie severed the appellants paying them various amounts which were less than they would have received under the old agreement.
 
 
 3
 On June 17, 1987, appellants filed an eight count complaint in the district court. The first count alleged that Maher had breached his duty by not knowing the law or by not acting appropriately under the law and as a result of this breach, the appellants lost their seniority and severance benefits. Counts two and three made the same allegations against the USWA and District 28.[3] The fourth count alleged that Lake Erie's termination of the Agreement as it regarded severance pay was wilful, in bad faith and discriminatory against the appellants in violation of the RLA. Count five alleged that Maher's conduct was "negligent, reckless, grossly reckless or grossly negligent, wanton, perfunctory and unsupported by any substantial purpose." Counts six and seven repeated the allegations in count five against District 28 and the USWA. The final count alleged that Lake Erie acted in bad faith in its dealings with the appellants.
 
 
 4
 On November 17, 1987, the district court granted the union defendants' motion to dismiss. The court characterized the appellants' claim as a violation of the duty of fair representation, and held that the appellants had not stated a claim for breach of the duty of fair representation because they did not allege differential treatment. The court determined that since the duty arose under federal law, the state claims were preempted.
 
 
 5
 On December 15, 1987, the district court granted Lake Erie's motion to dismiss and denied the appellants' motion for reconsideration of its November 17th order. The court characterized the bad faith bargaining claim as an allegation of an unfair labor practice. It dismissed this claim for failure to present it to the National Labor Relations Board.
 
 
 6
 Appellants appealed from each of the district court's orders. The appeals were consolidated. Appellants' arguments can be stated as challenges to the district court's dismissal of their breach of the duty of fair representation claims and the state law claims against the union defendants and the dismissal of their bad faith claim against Lake Erie.
 
 II.
 
 7
 A motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. The basic requirements for a pleading are set out in Rule 8(a) and call for 'a short and plain statement of the claim showing that the pleader is entitled to relief....' In considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id.; Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed. 80 (1957).
 
 
 8
 Nishiyama v. Dickson County, Tennessee, 814 F.2d 277, 279 (6th Cir.1987) (en banc).
 
 
 9
 If on a 12(b)(6) motion matters outside the pleadings are presented to and not excluded by the district court, the motion shall be treated as one for summary judgment. Fed.R.Civ.P. 12(b).
 
 
 10
 The general standard an appellate court applies in reviewing a grant of summary judgment is the same as the district court employs initially under Federal Rule of Civil Procedure 56(c). 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2716 (1983); Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). '[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the nonmoving party's case.' Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). 'Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate.' Gutierrez, 826 F.2d at 1536. Where it is clear there is no genuine issue of material fact, a court may properly grant summary judgment on a ground other than that assigned in the motion.
 
 
 11
 Hines v. Joy Mfg. Co., 850 F.2d 1146, 1149-50 (6th Cir.1988).
 
 A.
 
 12
 Appellants alleged that Maher's failure to enlist the services of the Mediation Board within ten days of the termination of conferences violated his duty as their representative. The district court fairly characterized this as a duty of fair representation claim.
 
 
 13
 Under the RLA, an employee may sue the union for breach of its duty of fair representation. See Steele v. Louisville & Nashville R.R., 323 U.S. 192, 202 (1944). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967). This court has held that "the duty of fair representation is implicated only when an individual or group is treated differently by a union--either through discriminatory, bad faith or arbitrary conduct--than another individual, group or collective." N.L.R.B. v. Local 299, International Bhd. of Teamsters, 782 F.2d 46, 51-52 (6th Cir.1986) (emphasis added).[4]
 
 
 14
 In dismissing this claim the district court came to the following conclusion:
 
 
 15
 In this case, plaintiffs have not alleged that they suffered differential treatment. Therefore, a uniform change in contract terms which affects all bargaining members in the same manner, such as the one in the instant case, is not considered a breach of a duty of fair representation.
 
 
 16
 We agree with the district court's resolution of this issue. The five appellants in this case constituted the entire work force of Lake Erie at the time of the actions alleged in the complaint. Since the complaint does not allege that any of the appellants were treated differently because of Maher's failure to request mediation the requirement of differential treatment was not met. Although this result may seem harsh, this court expressly recognized in Teamsters that "the duty of fair representation was never intended to be a 'catch all' for undesireable union activity." Teamsters, 782 F.2d at 51.
 
 B.
 
 17
 The district court made the following ruling on appellants' state law claims:
 
 
 18
 The fact that the plaintiffs argue that the defendants were negligent in that they allegedly breached a duty owed to the plaintiffs does not lead this court to find that a state law claim exists. Plaintiffs' reasoning is circular. Plaintiffs state that defendants owed plaintiffs a duty. But this duty, that of fair representation, if any, arises under federal statutes. Therefore, any breach of that federal duty is governed by federal, not state, standards and laws. This court, therefore, finds that plaintiffs' claims are federal and not state claims.[5]
 
 
 19
 It is clear from appellants' complaint that the basis of their state law negligence actions was Maher's violation of his duty of fair representation. Such a complaint alleges a "breach by the Union of a duty grounded in federal statutes, and [therefore] federal law governs [the] federal cause of action." Vaca, 386 U.S. at 177.
 
 
 20
 Since the basis of appellants' state law claims is the violation of a federally created duty and since the appellant failed to allege facts to show a breach of that duty, we believe the district court correctly dismissed the state law claims.
 
 C.
 
 21
 In counts four and eight of their complaint, appellants made allegations of bad faith conduct by Lake Erie. The district court dismissed these claims against Lake Erie on the following basis: "This court finds that plaintiffs are seeking a remedy which is not ripe for this court to decide. Such a complaint should be first presented to the National Labor Relations Board, not to the U.S. District Court." This holding by the district court was in error, since this case is not governed by the NLRA. See 29 U.S.C. Sec. 152 (excluding from the definition of employer "any person subject to the Railway Labor Act"). However, this erroneous holding does not warrant reversal of the district court's judgment on this issue. "A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1986). Because we find that appellants have not stated a claim under the RLA, we affirm the district court's dismissal of their action against Lake Erie.
 
 
 22
 Appellants' claims against Lake Erie involve the changing of the work rules which resulted in a reduction of their severance benefits. Their claims can be summed up in the following allegations from their complaint:
 
 
 23
 [B]y letter dated December 30, 1986, the Company sent to Leonard J. Maher, in his capacity as Staff Representative responsible for negotiations, a letter stating, based upon the impasse as of December 18, 1986, that the Company was instituting changes to the contract as of January 1, 1987....
 
 
 24
 [T]he Company imposed its new work rules, which did not contain the severance provisions of the previous contract.
 
 
 25
 Thereafter, in an attempt to resolve this matter, the Company severed Plaintiffs and paid them various amounts substantially less than to which they were entitled under the Agreement terms concerning severance pay.
 
 
 26
 This termination of the Agreement as it regarded severance pay, as well as the payment of less than that to which the Plaintiffs were entitled, was in violation of the Railway Labor Act and the Labor Management Relations Act, and was willful, in bad faith and discriminatory toward the plaintiffs.
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 As further evidence of its purpose and desire, the Company resolved the severance dispute at significantly less than that to which the Plaintiffs were entitled by duress and pressure.
 
 
 30
 Defendant Company's resolving of the severance dispute under the terms of their new work rules constituted a breach and an improper taking of benefits already accrued.
 
 
 31
 Section 2 Seventh of the RLA prohibits changes in work rules except in the manner prescribed in the agreement or in section 6 of the Act. 45 U.S.C. Sec. 152 Seventh. Section 6 allows for changes in work rules if a request for or proffer of the services of the Mediation Board has not been made within ten days of the termination of conferences concerning the changes.[6]
 
 
 32
 Appellants acknowledge in their complaint that no request for or proffer of the services of the Mediation Board were made within ten days of the termination of conferences between Lake Erie and the USWA.[7] Given this fact, Lake Erie was acting within its rights under the Act when it changed the work rules concerning severance benefits. Since the basis of appellants' bad faith allegations was the change in the work rules concerning severance benefits and since the making of such a change under the circumstances of this case was not contrary to the RLA, appellants' claims against Lake Erie should have been dismissed under the RLA.
 
 
 33
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Although the appellants brought this action under both the RLA and the LMRA, jurisdiction is only founded in the RLA since the LMRA excludes from the definition of employer any person subject to the RLA. See 29 U.S.C. Sec. 152
 
 
 [2]
 Section 6 of the RLA allows for a change in agreements affecting rates of pay, rules or working conditions if a request for or proffer of the services of the Mediation Board has not been made within ten days of the termination of conferences. 45 U.S.C. Sec. 156
 
 
 [3]
 The appellants based their claims against these defendants on an agency theory
 
 
 [4]
 Appellants' reliance on Milstead v. International Bhd of Teamsters, Local 957, 580 F.2d 232 (6th Cir.1978) and Ruzicka v. General Motors Corp., 649 F.2d 1207 (6th Cir.1981) is not helpful to the determination of this issue. These cases do stand for the propositions that a union's negligent failure to take a basic and required step in a grievance or the inept handling of a grievance by a union ignorant of contract provisions constitute a breach of the duty of fair representation. See Ruzicka, 649 F.2d at 1211; Milstead, 580 F.2d at 235. However, these cases were decided before Teamsters and do not address the element of differential treatment that Teamsters recognized. Also, Milstead and Ruzicka involved actions by the union which injured an individual member of the bargaining unit rather than all members of the bargaining unit as occurred in Teamsters and the instant case
 
 
 [5]
 In Reiss v. Brotherhood of Railway and Airline Clerks, 629 F.Supp. 1029 (E.D.Pa.1986) a district court faced with a nearly identical fact pattern also held that state law negligence claims against the Union were preempted by federal law
 
 
 [6]
 Section 6 reads as follows:
 Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.
 45 U.S.C. Sec. 156.
 
 
 [7]
 The failure to seek the services of the Mediation Board formed the basis of the appellants' complaint against the USWA