878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harry BUTTS, Plaintiff-Appellant,
v.
Michael DUTTON, et al., Defendants-Appellees.
 No. 87-6249.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1989.
 
 Before KEITH, KENNEDY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff Harry Butts, an inmate at the Tennessee State Penitentiary, appeals the district court's grant of summary judgment for defendants Michael Dutton, et al., prison officials, in his action under 42 U.S.C. Sec. 1983 alleging violations of his rights under the eighth and fourteenth amendments. We affirm.
 
 I.
 
 2
 On February 26, 1984, plaintiff was injured when he was struck by a bucket thrown by another inmate. When plaintiff refused to disclose his assailant, defendant Associate Warden James Vandever, acting in the temporary absence of defendant Warden Michael Dutton, ordered that plaintiff be placed in administrative segregation "for his own protection." Vandever's decision was approved by the Prison Discipline Board, and plaintiff was placed in administrative segregation on March 2, 1984.
 
 
 3
 On March 20, 1984, the Administrative Segregation Review Board ("Board") recommended that plaintiff be returned to the general prison population based on plaintiff's statement that his assailant had been transferred to another institution. Warden Dutton rejected this recommendation, stating that proof that plaintiff's enemy had been transferred was required to avoid further violence.
 
 
 4
 On April 19, 1984, the Board again recommended that plaintiff be returned to the general prison population. Warden Dutton again rejected the Board's recommendation, stating that he had to know the identity of plaintiff's enemy before he could safely release plaintiff into the general prison population.
 
 
 5
 On June 5, 1984, the Board recommended for a third time that plaintiff be released from administrative segregation. Warden Dutton again rejected the Board's recommendation, but stated, "I will consider [releasing Butts from segregation] if names of incompatibles are given."
 
 
 6
 Subsequently, Dutton submitted an affidavit to the Board stating his belief that if plaintiff were returned to the general prison population, violence would result. Based on Dutton's affidavit, the Board recommended on July 5, 1984, that plaintiff remain in segregation. Dutton approved this recommendation.
 
 
 7
 On July 11, 1984, there was an inmate uprising at the penitentiary, during which an inmate stabbed a corrections officer and assaulted another officer, and a group of inmates took a third officer hostage for a short time. Plaintiff claims that during this uprising several inmates entered the administrative segregation area and stabbed and robbed him.
 
 
 8
 On July 19, 1984, the Administrative Segregation Review Board recommended that plaintiff be returned to the general prison population, and Warden Dutton approved this recommendation. The record does not disclose the rationale for the Board's recommendation of release or for the warden's approval. Plaintiff was subsequently returned to the general prison population.
 
 
 9
 Plaintiff brought this pro se Sec. 1983 action in February 1985 against Warden Dutton and corrections officers Dale Hunt, J.D. Smith, John Collins, and Joe Havis ("original defendants"). Plaintiff's complaint alleged that his constitutional rights had been violated by Dutton's refusals to allow plaintiff to return to the general prison population and by the defendants' failure to protect plaintiff from the attack by other inmates during the inmate uprising. Plaintiff sought injunctive relief and compensatory damages of $50,000.
 
 
 10
 On June 26, 1985, before the original defendants filed an answer, plaintiff moved to amend his complaint and add additional defendants. Plaintiff attached to his motion an amended complaint naming the following defendants: Associate Warden James Vandever, corrections officer and Administrative Segregation Review Board member Charles McKinney, prison counselor Edgar Taylor, and corrections officers Earl Lowe, Billy Green, Jerry Craig, and Ronnie Lane ("newly-named defendants"). On July 31, 1985, the district court granted plaintiff's motion. Read liberally, plaintiff's amended pro se complaint alleges the following constitutional claims: 1) that his confinement to administrative segregation violated his due process and eighth amendment rights; 2) that defendants' failure to protect plaintiff during the inmate uprising violated his eighth amendment rights; and 3) that defendants' failure to provide defendant with a counselor and to review his segregation status in May 1984 violated his procedural due process rights.
 
 
 11
 All defendants, except newly-named defendant Lane, who was not served and whose dismissal plaintiff does not challenge, filed motions for summary judgment with supporting affidavits and depositions. In January 1987, the magistrate recommended that defendants' motions for summary judgment be granted, and in November 1987, the district court adopted the magistrate's report and recommendation and granted defendants' motions. This appeal followed.
 
 II.
 
 12
 This court reviews a district court's grant of summary judgment de novo. Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). Summary judgment is appropriate "[w]here the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)); see also Fed.R.Civ.P. 56(c). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).
 
 
 13
 Plaintiff's first assignment of error challenges the district court's grant of summary judgment for the "newly-named defendants." The court held that plaintiff's claims against these defendants were time-barred because plaintiff's amended complaint was not filed until July 31, 1985, the date the court clerk stamped it as "filed," which was after expiration of the one-year limitations period. The court also held that under Fed.R.Civ.P. 15(c) the amended complaint would not "relate back" to the date of the original complaint, February 1985.
 
 
 14
 The Tennessee general statute of limitations governing personal injury actions is applicable to this Sec. 1983 action. See Owens v. Okure, 102 L.Ed.2d 594, 605-06 (1989); Wright v. Tennessee, 628 F.2d 949, 951 (6th Cir.1980) (en banc ). This statute provides that actions "shall be commenced within one (1) year after cause of action accrued." Tenn.Code Ann. Sec. 28-3-104(a) (1980).
 
 
 15
 A preliminary question is on what date plaintiff's action against the newly-named defendants should be considered "commenced." Plaintiff's motion to amend his complaint[1] and the amended complaint were delivered to the district court on June 26, 1985. However, the district court did not formally grant the motion and the court clerk did not stamp the amended complaint as "filed" until July 31, 1985.
 
 
 16
 In a federal action in which a state limitations period has been borrowed, "the action is not barred if it has been 'commenced' in compliance with [Fed.R.Civ.P.] 3 within the borrowed period." West v. Conrail, 481 U.S. 35, 95 L.Ed.2d 32, 37 (1987). Rule 3 states: "A civil action is commenced by filing a complaint with the court." The Fifth Circuit has held that under this rule "[r]eceipt of the complaint by the court clerk, rather than formal filing, determines the time of filing." Martin v. Demma, 831 F.2d 69, 71 (5th Cir.1987); see also 4 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1052, at 165 (1987). We agree. As the Fifth Circuit stated: "Clerical delay in the formal filing of [an] in forma pauperis complaint should not affect the operative event, that is, the receipt of the complaint by the court." Martin, 831 F.2d at 71. Plaintiff's action against the newly-named defendants was therefore commenced on June 26, 1985, the date the amended complaint was delivered to the district court, and the district court's holding that plaintiff's action against these defendants was commenced on July 31, 1985, the date the complaint was formally stamped as filed, was erroneous. Thus, the critical question is whether plaintiff's claims against the newly-named defendants arose after June 26, 1984.[2]
 
 
 17
 Considering plaintiff's action against the newly-named defendants as commenced on June 26, 1985, his claims against newly-named defendants Vandever, Lowe, Green, and Craig are nonetheless time-barred. Review of plaintiff's amended complaint and the uncontradicted affidavit testimony of these defendants demonstrates that all claims plaintiff raises against these defendants accrued prior to June 26, 1984. However, plaintiff's complaint does assert a cause of action against newly-named defendants McKinney and Taylor that accrued after June 26, 1984: that these two defendants participated in an "arbitrary" decision to keep plaintiff in administrative segregation on July 5, 1984, in violation of his constitutional rights. Nevertheless, based on examination of the record, we hold that summary judgment for these two defendants was appropriate.[3] Uncontradicted record evidence shows that McKinney's and Taylor's July 5, 1984, recommendations to keep plaintiff in administrative segregation--recommendations that were contrary to their prior recommendations that plaintiff be returned to the general prison population--were based on Warden Dutton's affidavit stating that violence would result if plaintiff were released into the general prison population. Because plaintiff has shown no evidence that could support a jury verdict in his favor on his claims of constitutional deprivation arising from "arbitrariness" of newly-named defendants McKinney and Taylor, we hold that summary judgment for these two defendants was proper. We affirm the district court's grant of summary judgment for all newly-named defendants.
 
 III.
 
 18
 Plaintiff next challenges the district court's grant of summary judgment for Warden Dutton on plaintiff's claim that Dutton arbitrarily kept plaintiff in administrative segregation from March 1984 to July 1984. The court held that Dutton was entitled to summary judgment on this claim under the qualified immunity doctrine because at the time he acted "there was no clearly established procedural due process right to a due process hearing on Dutton's reversal of the Administrative Review Board's recommendation for Butt's release."
 
 
 19
 Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (emphasis added). The district court was correct that plaintiff had no "clearly established" due process right to a hearing on Warden Dutton's decision to keep plaintiff in administrative segregation. A prisoner in administrative segregation is entitled to "some sort of periodic review of the confinement," Hewitt v. Helms, 459 U.S. 460, 477 n. 9 (1983), and it is undisputed that plaintiff obtained such "periodic review." However, we do not read plaintiff's complaint to assert a due process entitlement to review of Warden Dutton's decisions; rather, plaintiff claims that his due process rights were violated because Warden Dutton's decisions to keep him in confinement were "arbitrary."
 
 
 20
 The Supreme Court has "repeatedly said both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." Hewitt, 459 U.S. at 467. The Court has also recognized that administrative segregation of prisoners may be used "to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer. Accordingly, administrative segregation is the sort of confinement that inmates should reasonable anticipate receiving at some point in their incarceration." Hewitt, 459 U.S. at 468 (citations omitted). Although the Supreme Court has recognized that prison officials have broad discretion to impose administrative segregation, the Court in Hewitt noted that there is a due process limit to the permissible uses of administrative segregation: "[A]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate." 459 U.S. at 477 n. 9. Thus, at least since the Supreme Court's 1983 opinion in Hewitt, it has been "clearly established" that a prisoner has a due process right not to be confined to administrative segregation "as a pretext for indefinite confinement."
 
 
 21
 We read plaintiff's claim that Warden Dutton's decisions to keep plaintiff in administrative segregation from March 1984 to July 1984 were "arbitrary" to assert a violation of this due process right. Because this right was "clearly established" in 1983, Dutton is not immune from liability on this claim. However, we find no genuine issue of material fact as to whether plaintiff's segregation was a pretext for indefinite confinement in violation of due process. Warden Dutton stated an entirely legitimate reason for his decisions in March, April, June, and July to confine plaintiff to administrative segregation: that, in his judgment, plaintiff's release into the general prison population would likely prompt further violence. The initial assault upon plaintiff and the alleged attack during the inmate uprising lend credence to the warden's belief that plaintiff's release into the general prison population would prompt violence. That plaintiff was released after the uprising without explanation does not constitute probative evidence that his prior segregation was a pretext for indefinite confinement. We hold that there is not "sufficient evidence favoring [plaintiff] for a jury to return a verdict for [him]," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), and that summary judgment for Warden Dutton on this claim was appropriate.
 
 IV.
 
 22
 Plaintiff's final assignment of error challenges the district court's grant of summary judgment for the "original defendants" on plaintiff's claim that their conduct prior to the alleged attack upon plaintiff during the inmate uprising violated his eighth amendment rights. The district court held that summary judgment was appropriate because there was no genuine issue of material fact as to whether the original defendants' conduct was "deliberately indifferent" to plaintiff's risk of injury.
 
 
 23
 "In determining whether prison officials have violated the Eighth Amendment rights of an inmate by failing to protect him from assault by another inmate this court has applied a standard of '... deliberate indifference on the part of the officials to [the plaintiff's] risk of injury.' " McGhee v. Foltz, 852 F.2d 876, 880-81 (6th Cir.1988) (citation omitted). The McGhee court stated that negligence--even gross negligence--in failing to respond to an inmate's risk of injury would not amount to "deliberate indifference" and thereby implicate an inmate's eighth amendment rights. 852 F.2d at 881.
 
 
 24
 Based on examination of the record, we are convinced that, as a matter of law, the original defendants' alleged conduct resulting in the prison uprising on July 11, 1984, did not amount to "deliberate indifference" to plaintiff's risk of injury. The record shows that prison officials knew that the cellblock in which the uprising occurred housed dangerous inmates, and that on the day of the uprising some of these inmates appeared intoxicated. Yet the officials released these prisoners from their cells for dinner, and the inmate uprising and alleged attack upon plaintiff ensued. Although the prison officials' actions may well have been negligent, we agree with the district court that the conduct cannot be said to constitute "deliberate indifference" to plaintiff's risk of injury. Indeed, those most imperiled by defendants' actions were corrections officers, one of whom was stabbed, one assaulted, and one taken hostage during the inmate uprising. The district court did not err in granting summary judgment for the original defendants on this claim.
 
 
 25
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Plaintiff's motion to amend, which was filed before defendants filed an answer to his original complaint, was unnecessary because, under Fed.R.Civ.P. 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."
 
 
 [2]
 The district court properly held that under Fed.R.Civ.P. 15(c) plaintiff's action against the newly-named defendants should not "relate back" to February 1985, the date plaintiff filed his complaint against the original defendants. It is undisputed that the newly-named defendants had neither actual or constructive notice of plaintiff's action within the limitations period; therefore, relation back under Rule 15(c) is inappropriate
 
 
 [3]
 This court has held that "[a] decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 6th Cir.1985)