Anthony GUTIERREZ,
Plaintiff-Appellant,

v.

John E. LYNCH, III, individually and as Chief of Police, Youngstown Police Department; George Vukovich, individually and as Mayor of Youngstown, Ohio; John Franken, individually and as Risk Manager; City of Youngstown, Ohio c/o Edward Sobnosky, Law Director of Youngstown, Defendants-Appellees.

No. 86–3637.

United States Court of Appeals, Sixth Circuit.

Argued May 22, 1987.

Decided Aug. 25, 1987.

Frank J. McNally (argued), Thomas G. McNally, Rocky River, Ohio, for plaintiff-appellant.

Robert B. Stein (argued), Pittsburg, Pa., for Vukovich.

William J. Higgins, Youngstown, Ohio, for John Franken.

Timothy E. Franken, Youngstown, Ohio, for J. Franken.

Harold Stein, Cheryl L. Waite (argued), Youngstown, for Lynch, Vukovich Franken, & the City of Youngstown.

Before KENNEDY, JONES and RYAN, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Anthony Gutierrez appeals from the district court's order granting summary judgment in favor of defendants in this civil rights case. For the reasons set forth below, we affirm the district court's order.

## I.

Gutierrez, a former lieutenant on the Youngstown police force, was terminated on December 6, 1982. The letter of dismissal sent to Gutierrez listed eight charges that constituted the grounds for his dismissal. He was charged with directing threatening and abusive language towards city councilmen and various city department heads, as well as issuing death threats against the Mayor of Youngstown, George Vukovich.

Following his termination, plaintiff sought review before the Youngstown Civil Service Commission. A hearing was set for December 16, 1982. Plaintiff requested a continuance and the hearing was rescheduled for February 3, 1983. Due to the fact that two of the three members of the Commission resigned prior to the adjourned hearing date, the hearing was again delayed until March 3, 1983, while new members were appointed. Shortly thereafter, the Commission announced its decision that plaintiff had been properly terminated for violating the rules of the Youngstown Police Department.

Plaintiff then appealed the Commission's decision to the Court of Common Pleas for Mahoning County, Ohio. On April 4, 1984, the court found "by a preponderance of reliable, probative and substantial evidence that the Youngstown Civil Service Commission decision, upholding the Police Department termination and dismissal of the Appellant, Anthony Gutierrez, was proper and in accordance with law." In a five page opinion, the court specifically addressed the dismissal procedure employed by the Youngstown Police Department and the Civil Service Commission, and concluded that the procedure required by law at the time of plaintiff's dismissal and the Commission's hearing had been followed properly.

Plaintiff next appealed to the Ohio Court of Appeals. On July 16, 1985, that court affirmed the judgment below and overruled all of plaintiff's assignments of error. One of the assignments of error specifically dealt with the alleged deprivations of "the most rudimentary requirements of due process of law." Plaintiff contended that he had not been given adequate and timely notice of the hearing, that the hearing had not been held in a timely fashion, and that the hearing was not held before an impartial board. The court rejected all of these contentions and found that the post-termination hearing had been constitutionally sound. The Ohio Supreme Court declined leave to appeal.

Plaintiff then sought relief in the federal courts. Plaintiff had previously filed suit in federal district court on October 12, 1982, alleging that his federal constitutional rights had been violated because he had been denied sick leave compensation and injured-on-duty status in violation of 42 U.S.C. §§ 1981, 1983 and 1985 (1982). Af-

ter his termination, plaintiff amended his original complaint and asserted a new § 1983 claim alleging, *inter alia*, that the defendants herein, Mayor Vukovich, Chief of Police John Lynch, Risk Manager John Franken, and the City of Youngstown, had conspired to deprive him of his constitutional rights; that he had been denied due process because he had not been afforded proper pretermination and post-termination hearings; and that his right to privacy had been violated by a city ordinance that, *inter alia*, required employees on sick leave for more than 30 days to complete a form providing the City with medical information.

Defendants subsequently filed a motion for summary judgment. On February 6, 1986, the district court issued an order granting in part and denying in part defendants' motion. The court held that since plaintiff had fully litigated his termination claim in the state courts, the full faith and credit statute, 28 U.S.C. § 1738 (1982), precluded the federal courts from addressing this claim. Plaintiff had argued to the court that the fact that he had not been given a hearing prior to his termination pursuant to the Supreme Court's mandate in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), constituted a constitutional violation that had not been litigated in the state courts. Plaintiff went on to argue that since this issue had not been previously litigated, the full faith and credit statute was inapplicable. The court rejected this contention.

The court also held that the defendants' motion for summary judgment on plaintiff's conspiracy claim should be granted because plaintiff's complaint contained only vague and conclusory allegations. The district court declined to grant defendants' motion for summary judgment on the invasion of privacy claim because defendants had not specifically detailed how plaintiff's privacy rights were being safeguarded. However, the court allowed defendants to renew their motion within 30 days. Defendants did this, and along with their renewed motion, submitted affidavits detailing the manner in which plaintiff's rights

were being safeguarded. Based on this new application, the court granted summary judgment in favor of defendants on this issue as well on June 5, 1986. Plaintiff now appeals.

## II.

Plaintiff contends that the district court erred in entering summary judgment in favor of defendants. An appellate court applies the same test as used by the district court in reviewing a motion for summary judgment. *Hand v. Central Transport, Inc.*, 779 F.2d 8, 10 (6th Cir.1985). Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A.

Plaintiff first contends that the district court's holding that his due process claim was barred by the full faith and credit statute is erroneous. Plaintiff argues that since he did not raise the pretermination hearing issue in state court, he should not be barred from now raising it in federal court. Plaintiff also argues that his post-termination claim should not be barred because the state courts were without jurisdiction to address that claim since the proper pretermination procedures had not been followed.

██ The foundation of the district court's holding on this issue is the full faith and credit statute, which provides in relevant part that:

> The records and judicial proceedings of any court of any ... State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States....
>
> Such acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States

and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. The effect of this statute is to impose on federal courts "the obligation to give state court judgments the same effect as they have in the state in which they were rendered." *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 556 (6th Cir.1983), *aff'd*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In other words, if an individual is precluded from litigating a suit in a state court by the traditional principles of res judicata,[1] he is similarly precluded from litigating the suit in federal court. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).

In this instance, plaintiff's claim was brought pursuant to § 1983. In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that § 1738 governs § 1983 actions, and may, in certain circumstances, require federal courts to give a state court judgment preclusive effect, at least on the grounds of collateral estoppel or issue preclusion, if not claim preclusion. *See id.* at 97 n. 10, 101 S.Ct. at 416 n. 10. The import of *Allen* is obvious: if a plaintiff has had the opportunity to fully litigate certain issues in a state court proceeding, and the state court has decided those issues adversely to him, § 1738 precludes him from raising those issues in a subsequent § 1983 suit in federal court. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984).

■ In deciding whether res judicata or the full faith and credit statute lend preclusive effect to a particular state court decision, federal courts look to the state's law to "assess the preclusive effect it would attach" to that decision. *Loudermill*, 721

F.2d at 557. As in most jurisdictions, Ohio's doctrine of res judicata bars relitigation of those claims upon which a final judgment on the merits has been rendered. *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67, 71 (1943). The doctrine of res judicata also bars those claims that might have been litigated in the first lawsuit. *See Rogers v. City of Whitehall*, 25 Ohio St.3d 67, 494 N.E.2d 1387, 1388 (1986). However, in order "[t]o constitute a bar there must be identity not only of subject matter but also of the cause of action. In other words, a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter." *Norwood*, 52 N.E.2d at 71. "The test for determining whether a second suit is for the same cause of action as the first is to consider the facts necessary to sustain the two claims." *Duncan*, 752 F.2d at 1139.

■ Plaintiff's federal claim alleged a denial of due process at two stages: first, at the pretermination stage because no hearing was held and, second, at the post-termination stage because the hearing held at that point was inadequate. To the extent that plaintiff's federal claim challenged the adequacy of the process afforded him following his termination, there can be little doubt but that the claim is precluded by res judicata. Plaintiff's state suit sought relief for what he perceived to be a denial of due process regarding his post-termination hearing. On his appeal to the Ohio Court of Appeals, one of his claims of error was that the "Civil Service hearing failed to comply with the most rudimentary requirements of due process of law and the decision of the Civil Service Commission is therefore null and void." Plaintiff's federal suit also seeks relief for denial of due process following his termination. The

---

**1.** Res judicata involves two forms of preclusion. Claim preclusion provides that "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). The doctrine of issue preclusion,

otherwise known as collateral estoppel, provides that "a decision precludes relitigation of the same issue on a different cause of action between the same parties once a court decides an issue of fact or law necessary to its judgment." *Duncan v. Peck*, 752 F.2d 1135, 1138 (6th Cir. 1985).

same cause of action was fully litigated on the merits in the state courts. Plaintiff therefore could not bring this claim before another state court, and he similarly cannot now raise it in a federal court.

Plaintiff's other claim—that he was denied due process because the City failed to provide him with a pretermination hearing—is also barred by res judicata. Res judicata bars both those claims that have been previously litigated and those claims that *could* have been previously litigated. Both plaintiff's pretermination and post-termination due process claims constitute a single cause of action. Plaintiff could have and should have litigated all aspects of his denial of due process claim in his state suit. He should have raised the pretermination hearing claim at the same time he litigated the post-termination hearing claim.

We are aware that at the time of plaintiff's termination in 1982 the Ohio Supreme Court had held that a tenured public servant did not have a due process entitlement to a pretermination hearing. *Parfitt v. Columbus Correctional Facility*, 62 Ohio St.2d 434, 406 N.E.2d 528, 531, *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). Not until the United States Supreme Court's decision in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), were tenured public employees held entitled to a pretermination hearing consisting of "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. Subsequent to this deci-

sion, Ohio courts have recognized the right public employees have to a pretermination hearing. *See, e.g., Csanyi v. Cuyahoga County Comm.*, 29 Ohio App.3d 37, 502 N.E.2d 700 (1986). We have also recently held that *Loudermill* should be given retroactive effect.[2] *Gurish v. McFaul*, 801 F.2d 225, 227 (6th Cir.1986).

This subsequent recognition of the right to a pretermination hearing is of scant assistance to plaintiff because he failed to preserve his claim.[3] Nothing prevented plaintiff from arguing to the state courts that he was entitled to such a hearing. The fact that the right was not recognized until after plaintiff's state action was resolved does not mean that he could not have raised the issue during the state litigation. Plaintiff has had the opportunity to fully and fairly litigate his claim on the merits in state court. There is no reason to allow him to reopen his claim in the federal courts. The district court did not err in granting summary judgment in favor of defendants.[4]

**B.**

Plaintiff next asserts that the district court erred in granting summary judgment in favor of defendants on the conspiracy claim. It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. *See, e.g., Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984) (conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence

---

2. Retroactive application of *Loudermill* is unhelpful to plaintiff because he has already had an opportunity to litigate his due process claim. Individuals terminated without a pretermination hearing prior to the *Loudermill* decision may contest their dismissal in the courts provided their claims are not barred by the applicable statute of limitations. Plaintiff has already availed himself of the opportunity to challenge his dismissal on due process grounds. His situation is therefore different from that of those individuals who have never raised a legal challenge to their dismissals or whose due process claims have not yet been fully litigated by any court.

3. Plaintiff could have avoided the res judicata problem by petitioning the Ohio courts for rehearing in light of the change in the law brought about by *Loudermill*. Rather than do this, plaintiff chose to terminate his state action and commence a separate action in the federal courts.

4. We also find that plaintiff's contention that the state courts were without jurisdiction to consider his post-termination claim is meritless. The procedures in place at the time of plaintiff's dismissal were properly followed. Therefore, the state courts did have jurisdiction to consider all aspects of plaintiff's claim.

language void of the factual allegations necessary to support a conspiracy theory"). Plaintiff's allegations of conspiracy are contained in two paragraphs of his amended complaint. In paragraph 37 plaintiff states that "his job termination was the ultimate result of the conspiracy of Defendants to punish Plaintiff for his refusal to whitewash his investigation of city contracts." In paragraph 49, plaintiff states that defendants "conspired against Plaintiff to unlawfully deprive him of his employment, his good name and reputation as punishment for Plaintiff's continued refusal to whitewash city contracts."

 A review of the allegations contained in these paragraphs clearly indicates that they are insufficient to withstand a motion for summary judgment. Plaintiff's allegations lack the requisite material facts and specificity necessary to sustain a conspiracy claim. The district court did not err in granting defendants' motion for summary judgment on this claim.[5]

### C.

Plaintiff's final claim of error is that the district court erred in granting summary judgment in favor of defendants on the invasion of privacy claim. Plaintiff argued before the district court that Ordinance 82–416, which required plaintiff to divulge certain medical information, impermissibly infringed on his privacy rights.

It is firmly established that individuals have a constitutionally protected right to privacy. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The right to privacy involves two kinds of interests. One is the right to avoid disclosing matters of a personal nature; the other is the right to independence in making certain types of important personal decisions. Whalen v. Roe, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977).

Upon review of the record, we conclude that plaintiff's medical records are not protected by the constitutional right to privacy. We find this case to be indistinguishable from Whalen v. Roe. In that case the Supreme Court held that a state law that required that the names and addresses of all persons who used certain drugs be supplied to the state health department did not "constitute an invasion of any right or liberty protected by the Fourteenth Amendment." Id. at 603–04, 97 S.Ct. at 878. The implication of that holding is that legitimate requests for medical information do not constitute an invasion of the right to privacy. In the instant case, the request for information is legitimate and does not invade plaintiff's right to privacy. Accordingly, we hold that Ordinance 82–416 does not violate plaintiff's right to privacy.

The district court's judgment is AFFIRMED.

---

**5.** We also note in passing that the district court could have dismissed plaintiff's conspiracy claim on alternative grounds. Plaintiff's conspiracy allegations are no more than a different theory of recovery on his due process claim.

Since plaintiff's due process claim has been fully litigated in the state courts, the federal courts are now foreclosed from considering any aspect of that claim.