877 F.2d 62
 50 Fair Empl.Prac.Cas. 680
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary Sue ACRED, Plaintiff-Appellant,
v.
The MOTOR CONVOY, INC., Defendant-Appellee.
 No. 88-6268.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1989.
 
 Before BOYCE I. MARTIN, Jr. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Mary Sue Acred appeals from the district court's summary judgment and order denying her motion to amend judgment in this sex discrimination case brought pursuant to 42 U.S.C. Sec. 2000e et seq. (Title VII). For the following reasons, we affirm the district court's judgment in all respects.
 
 I.
 
 2
 Mary Sue Acred began working for Motor Convoy, Inc. as a computer operator in its Memphis, Tennessee terminal in December of 1982. She advanced to the supervisory position of dispatcher, and she held that job through January 3, 1986. On that date, her employer presented her with the option of immediately resigning or of facing termination.
 
 
 3
 Acred chose to resign because her employer informed her that if she was terminated, the evidence which the company had accumulated against her would be placed in her file for further reference and use. She was told that the company had "overwhelming evidence that [she] as a nonbargaining unit supervisor [had] not conducted [herself] properly with a bargaining unit employee and-or employees." Curtis Goodwin, assistant vice president for industrial relations, assured Acred that in his opinion the company's ultimatum had nothing to do with her being a woman.
 
 
 4
 Elizabeth Fracchia replaced Acred after her resignation.
 
 
 5
 Thereafter, on February 7, 1986, Acred filed a charge of discrimination against the company with the Equal Employment Opportunity Commission (EEOC). The charge alleged that the company adopted a rule that management personnel could not socialize with bargaining unit employees; that during Acred's employment with the company she developed a friendship with a male driver for which she was suspended for three days and subsequently discharged; and that the company work rule was not enforced against male supervisory personnel who socialize with bargaining unit employees, nor did the company take action against any of the bargaining unit employees who allegedly socialized with her.
 
 
 6
 The EEOC issued a notice of right to sue dated July 30, 1986.
 
 
 7
 On October 2, 1986, Acred filed the complaint in this case containing allegations similar to those included in the EEOC charge.
 
 
 8
 On September 12, 1988, the district court granted the company's motion for summary judgment. The district court noted that clearly Acred was discharged for having a sexual affair with one of the drivers, which compromised her ability to supervise the drivers. The court also noted that G. Forest Guest, the person responsible for making the decision to terminate Acred, felt that the situation was exacerbated because he believed Acred had lied to management in September of 1985, when she denied rumors of the affair. The court held that Acred's allegations of similar conduct by male supervisors were not comparable enough to make out a prima facie case of sex discrimination. The district court also concluded that Acred and the truck driver with whom she had the affair were not similarly situated since his conduct was not governed by the supervisors' rule.
 
 
 9
 Acred filed a motion to amend judgment which the district court denied on October 14, 1988.
 
 
 10
 This timely appeal followed. We must decide whether the district court erred in granting Motor Convoy's motion for summary judgment.
 
 II.
 
 11
 The general standard an appellate court applies in reviewing a grant of summary judgment is the same as the district court employes initially under Federal Rule of Civil Procedure 56(c). Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2716 (1983). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise an issue of material fact for trial, entry of summary judgment is appropriate." Gutierrez, 826 F.2d at 1536.
 
 
 12
 Although a motion for summary judgment must be carefully scrutinized in any case involving ... civil rights, this does not mean that summary judgment is impossible.... [I]n a discrimination case, the court may grant the motion if it determines that no evidence has been presented indicating that a discriminatory purpose was a motivating factor.
 
 
 13
 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2732.2 (1983) (footnotes omitted). For example, in Box v. A & P Tea Company, 772 F.2d 1372, 1378-79 (7th Cir.1985), the Seventh Circuit affirmed the district court's grant of summary judgment in a Title VII case in which the appellant, cashier Paula Brockhouse, presented, inter alia, the following in support of her motion for summary judgment:
 
 
 14
 Brockhouse also stated in her deposition that the man whom A & P did not discipline was a new employee. Evidence that A & P disciplined Brockhouse, an experienced, full-time cashier, for cash shortages but did not discipline a new employee who only occasionally operated a cash register does not create a genuine issue of fact as to pretext.
 
 
 15
 At her deposition, Brockhouse stated that she never saw Don Howard discipline a man. This general statement is not enough to avoid summary judgment; she needed to show both that a male had committed a comparable offense and that Howard had failed to discipline him.... In the present case, Brockhouse had to produce evidence of specific facts that, viewed in the light most favorable to her, supported a reasonable inference that the reason given for her discharge was pretext.
 
 
 16
 See also Shah v. General Electric Co., 816 F.2d 264, 271 (6th Cir.1987).
 
 
 17
 In the instant case, appellant argues that the genuine issues of material fact which preclude the grant of summary judgment include the definition, scope and breadth of an unwritten company rule directed at the supervisor's interaction with bargaining unit employees, the application of the interaction rule to male supervisors, and the reasonableness of the interaction rule's application to appellant. We disagree.
 
 
 18
 With respect to the definition, scope and breadth of the interaction rule, the district court held that this fact was immaterial. In fact, the district court seemed willing to assume that the interaction rule broadly applied to many forms of fraternization. Regardless of the construction given the rule, appellant's conduct fell within its scope. Thus, this part of appellant's argument is inapposite.
 
 
 19
 With respect to the application of the interaction rule to male supervisors, and the reasonableness of its application to appellant, appellant argues that the facts raise an inference that other male supervisors had prohibited close, personal relationships with drivers and were not disciplined for such violations.
 
 
 20
 The most similar example of prohibited close, personal relationships with male drivers was appellant's assertion that supervisor Bill Gill possibly lived with and at least socialized with drivers. This example, however, does not aid appellant's case since Gill's possible rule violation was investigated in the same manner, in fact more thoroughly, than appellant's. For example, when appellant initially denied having an affair with driver Billy Hewlette, the matter was dropped without further investigation until Mrs. Hewlette visited the company terminal to confront appellant. On the other hand, when Gill denied that a truck driver was staying at his home, Goodwin drove by Gill's apartment looking for the driver's truck. The point is not that Gill may have been violating the rule behind the company's back as appellant asserts; it is that the company investigated the charge against Gill at least as seriously (probably more so) than it investigated the charge against appellant.
 
 
 21
 With the exception of Acred's and Gill's conduct, there is no evidence that the company received any complaints of over-fraternization leading to possible favoritism. Moreover, the company was not even aware of the other alleged possible rule violations. For example, in her affidavit, Acred stated that shop foreman Gary Davis told her that he believed he could get into trouble if Atlanta discovered that he went hunting with certain bargaining unit employees. Thus, the other supervisors were not similarly situated for these two additional reasons, as well as the fact that their conduct (hunting together, occasionally dining at a driver's home, and maybe drinking beer together) was almost assuredly qualitatively different from appellant's.[1]
 
 
 22
 At oral argument, appellant contended for the first time that this case involves direct evidence of sexual stereotyping similar to that present in the recently decided case of Price Waterhouse v. Hopkins, 57 U.S.L.W. 4469 (S.Ct. May 1, 1989). We reject this argument.
 
 
 23
 This court generally declines to review arguments not presented to the district court in the first instance. Sigmon Fuel Co. v. Tennessee Valley Auth., 754 F.2d 162, 164-65 (6th Cir.1985). Sexual stereotyping is not a novel concept in Title VII litigation. For example, in Los Angeles Department of Water & Power v. Manhart, 435 U.S. 702, 707 n. 13 (1978), the Supreme Court observed: "In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes."
 
 
 24
 Moreover, appellant's evidence could not support a finding of sexual stereotyping. Appellant relies on Guest's testimony that Acred's management of subordinate employees had been compromised as a result of her affair. At best this testimony evidences the stereotyping of superior/subordinate relationships generally. As we have indicated above, appellant gives us no reason to believe that the company's rule against management socialization with bargaining unit employees would not be applied equally to men.
 
 
 25
 For the foregoing reasons, the district court's opinion is AFFIRMED in all respects.
 
 
 
 [1]
 Appellant makes no argument that Hewlette, a bargaining unit employee, was similarly situated, although in her fact section she states that he was treated more favorably. The district court held that Hewlette was not similarly situated because the fraternization rule in question applied only to nonbargaining unit employees. This holding is in accord with appellant's characterization of the rule