108 F.3d 1376
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
AUSTRAL-PACIFIC FERTILIZERS, LTD., and Commercial Union
Assurance Company of Australia, Ltd., Plaintiffs-Appellants,
v.
COOPER INDUSTRIES, INC. d/b/a Cooper Energy Group, Defendant-Appellee.
 Nos. 95-4255, 95-4287.
 United States Court of Appeals, Sixth Circuit.
 March 18, 1997.
 
 Before: NELSON and DAUGHTREY, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 This appeal is from an order of the district court, dismissing the complaint filed by the plaintiff, Austral-Pacific Fertilizers, Ltd., on motion of the defendant, Cooper Industries, under Fed.R.Civ.P. 37(b). The motion was predicated on spoliation of evidence. We conclude that the dismissal was premature, because it deprived the plaintiff of an opportunity to test the defendant's assertion of inability to proceed or to present evidence of lack of actual prejudice. We therefore reverse the judgment of the district court and remand the case for further proceedings.
 
 
 2
 As to the cross-appeal filed by Cooper Industries, we conclude that the district court properly denied the defendant's motion for summary judgment and affirm that portion of the judgment.
 
 Procedural and Factual Background
 
 3
 In 1969, Austral-Pacific purchased an air compressor from Cooper Industries for use in their Queensland, Australia, fertilizer manufacturing plant. Over the next 17 years, Austral-Pacific bought replacement parts for the compressor from Cooper Industries on a regular basis without incident. In 1986, Austral-Pacific purchased a particular oil bearing housing from Cooper Industries, which was subsequently installed in the compressor by Austral-Pacific personnel. Approximately two weeks later, the compressor failed, causing over $2 million in property damages and lost production.
 
 
 4
 Immediately after the compressor failure, Austral-Pacific disassembled the compressor in order to determine the cause of the breakdown and to ascertain what could be salvaged and repaired. Company officials notified Cooper Industries of the situation, requesting their assistance with repair or replacement. Cooper Industries sent two technical employees over to Australia to examine the situation. These two employees spent considerable time examining, measuring, photographing, and sketching the relevant mechanical parts. They had complete and unlimited access to all the parts at that time.
 
 
 5
 The parties agree that the oil bearing housing was defective in that Cooper Industries failed to drill one of the oil pathways into the mechanism. The parties disagree, however, as to whether this flaw actually caused the mechanical failure. Austral-Pacific claims that the missing oil pathway did cause the breakdown, while Cooper Industries argues that Austral-Pacific caused the breakdown by installing the new part incorrectly.
 
 
 6
 Austral-Pacific brought suit against Cooper Industries in 1990, seeking compensation for their losses. Cooper Industries promptly moved for discovery of the parts, requesting that they be sent to the United States for examination by their causation expert. Austral-Pacific responded equally promptly, acknowledging the importance of the parts but declining to send them to the United States. Instead, they informed Cooper Industries that the parts would be available in Australia for their examination at anytime. Cooper Industries renewed its request for production of the parts in the United States, but before the court resolved the matter of the part production, discovery was suspended pending resolution of a motion for summary judgment.
 
 
 7
 The parties had no further communication regarding the parts for the next three years, until discovery in the action began again. At that time, Cooper Industries made a motion to compel production of the parts, which had been in the possession of Austral-Pacific throughout the case. Austral-Pacific did not oppose this motion, and it was granted by the court. The court's order gave Austral-Pacific 20 days to produce the parts. Rather than complying, however, Austral-Pacific notified Cooper Industries by letter that the parts were no longer available for inspection because they had been inadvertently discarded by an employee at some point in 1993. Subsequently, Austral-Pacific found the oil bearing housing itself; the surrounding parts, purportedly more relevant to the defendant's theory of faulty installation than is the actual housing, were not found.
 
 
 8
 Eight months after learning that the parts were unavailable, Cooper Industries filed a motion to dismiss the action on account of spoliation of evidence and failure to respond to the court's Rule 37(a) production order. The motion was supported by the affidavit of Salvatore Malguarnera, the defendant's causation expert, asserting that because he could not examine the parts themselves, he would be unable to support the defense's exculpatory theories of causation. Austral-Pacific opposed the motion, alleging that some of the information Cooper Industries claimed that it needed could not be gained from the parts, even if they were available, and that other information could be obtained from sources still available. A week later, without investigating the defendant's claim of prejudice any further, the district court granted the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 37(b).
 
 Discussion
 
 9
 In reviewing a district court's dismissal of a claim pursuant to Fed.R.Civ.P. 37(b), we employ an abuse of discretion standard. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976) (per curiam ); Beil v. Lakewood Engineering and Mfg. Co., 15 F.3d 546, 551 (6th Cir.1994). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary, or fanciful." Beil, supra, at 551. In assessing the third of these three possibilities, whether "the district court's decision is clearly unreasonable, arbitrary, or fanciful," several factors are relevant. Id. at 552. Among the factors to be considered by the appellate court in its review for abuse of discretion are "(1) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, (2) whether the dismissed party was warned that failure to cooperate could lead to dismissal, and (3) whether less drastic sanctions were imposed or considered before dismissal was ordered." Id. (citing Taylor v. Medtronics, Inc., 861 F.2d 980, 986 (6th Cir.1988)). Also relevant to the court's final decision on the severity of sanctions is the " 'willfulness' of the offending party's failure to comply." Taylor, supra, at 986. We have held that "the burden of proof is on the dismissed party to establish 'that the failure to comply [with the discovery order] was due to inability, and not to willfulness, bad faith or any fault of the party.' " Id. at 987 (citing Regional Refuse Systems v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir.1988)).
 
 
 10
 In considering sanctions for failure to comply, the district court does not automatically abuse its discretion by dismissing a case " 'even though other sanctions might be workable, if dismissal is supported on the facts.' " Beil, supra, at 552 (citing Regional Refuse Systems, supra, 842 F.2d at 155). This extreme sanction must be available to the trial court "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent," National Hockey League, supra, at 643. These concerns of punishment and deterrence must be balanced, however, with the recognition that dismissal with prejudice is "the sanction of last resort," to be imposed only in the most extreme of circumstances. Beil, supra, at 552. "The unavailability of evidence due to the plaintiff's ... destruction and the corresponding negative inferences do not necessarily mandate dismissing the case or granting summary judgment. Cases are often tried even though a crucial piece of evidence is unavailable." Beil, supra, 15 F.3d at 553 (emphasis in original). Hence, the central question for the district court should be that of actual prejudice to the party seeking discovery, which in turn will control the sanction, if any, to be imposed on the non-complying party.
 
 
 11
 In assessing the plaintiff's claim that the district court abused its discretion under Rule 37(b), we must evaluate the appropriateness of the sanction of dismissal given the situation at hand. In its opinion and order dismissing this action with prejudice, the district court considered the three factors explicitly set forth for abuse of discretion review: prejudice to the opposing party, warning to the non-complying party, and the feasibility of lesser sanctions. Additionally, the district court considered the culpability of Austral-Pacific in the loss of this evidence. The court found that the defendant was prejudiced by the loss, that Austral-Pacific could not rectify its failure to produce the parts and thus warning was irrelevant, and that lesser sanctions were not feasible because of the centrality of the evidence lost. Although the district court did not find willful destruction of evidence or bad faith on the part of Austral-Pacific, it found that they were "at fault for their inability to comply with the Court's order to produce the parts for inspection in the United States." Based on these considerations, the court concluded that "the extreme sanction of dismissal is warranted in this case."
 
 
 12
 In the instant case, the parties agree that the parts in question are unavailable for inspection at this time, and that Cooper Industries's causation expert had not personally inspected them prior to their disappearance. Cooper claims a resulting prejudice and disadvantage in preparing its defense. When determining the appropriateness of sanctions under Rule 37(b), the district court must apply state law regarding the presumptions that follow from the destruction of evidence. Welsh v. United States, 844 F.2d 1239, 1243 (6th Cir.1988). Under Ohio state law, spoliation of evidence by a party results in a presumption that the evidence would have been favorable to its opponent. Bright v. Ford Motor Co., 578 N.E.2d 547, 549-50 (1990). In the instant case, Austral-Pacific, the party responsible for the spoliation of the evidence, must rebut the presumption of prejudice to Cooper Industries.
 
 
 13
 Austral-Pacific attempts to overcome the presumptive prejudice by claiming that although the most important physical evidence was lost before the defendant's causation expert examined it, Cooper Industries already had enough information about that physical evidence to present a meaningful defense. In its motion opposing the defendant's request for sanctions including dismissal, Austral-Pacific argued that the information needed for the preparation of a meaningful defense was available elsewhere, particularly from the data gathered by technical experts immediately after the breakdown. Additionally, Austral-Pacific argued that discovery of the parts would not have been exculpatory, both because other evidence undermined the defense theories Cooper Industries planned to prove and because the information that the defendant stated it sought would not be available from the disassembled parts. Thus, Austral-Pacific maintains, the defendant's inability to examine the parts at that time had caused no harm.
 
 
 14
 The trial judge based his finding of prejudice to Cooper Industries on the affidavit of the defense causation expert and on a finding that the two technical employees who had originally examined the mechanism would not be able to provide adequate information. Throughout the months prior to the Cooper Industries's motion to dismiss, and again in its own brief in opposition to that motion, Austral-Pacific specifically asserted its need to depose these three individuals in order to demonstrate that Cooper Industries had adequate information to put on its defense. Rather than granting Austral-Pacific the opportunity to depose those witnesses, however, the court found prejudice on the facts before it and dismissed the case.
 
 
 15
 We conclude that when there is a factual dispute as to whether actual prejudice has resulted from a loss of evidence, the trial court should allow the plaintiffs an opportunity to rebut the presumption against them before determining what sanction is appropriate. See, e.g., Jackson by Jackson v. Nissan Motor Corp. in U.S.A., 121 F.R.D. 311 (M.D.Tenn.1988), rev'd on other grounds, 888 F.2d 1391 (6th Cir.1989). The legal system's reluctance to resort to dismissal of an action, both under federal and Ohio state law, mandates that the court gather all relevant facts before imposing so extreme a sanction.
 
 
 16
 If Cooper Industries was not actually prejudiced by the loss of the compressor parts, the trial court's dismissal of Austral-Pacific's action would be an insupportable invocation of the most extreme sanction available under Rule 37(b). Of course, we recognize that Austral-Pacific has the burden of proving lack of prejudice and that it faces an uphill battle in this regard. Nevertheless, given the specificity of Austral-Pacific's offers to prove lack of prejudice and the general aversion to dismissing a case as a sanction, as opposed to dismissal on the merits, we believe that the trial court abused its discretion in refusing to allow any further discovery or presentation of evidence on the issue of prejudice. For this reason, the case must be remanded to the district court.
 
 Cross Appeal
 
 17
 On cross-appeal, Cooper Industries challenges the district court's denial of their motion for summary judgment. This court reviews a district court's denial of summary judgment de novo. Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1176 (6th Cir.1996). Summary judgment is appropriate when "the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits on the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial," Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). Based on Australian law, which the parties agree controls the contract agreement, we hold that the district court properly denied Cooper Industries's motion for summary judgment, and we affirm that denial.
 
 
 18
 Shortly after the institution of this lawsuit, Cooper Industries moved for summary judgment, contending that a one-year statute of limitations clause printed on the back of their standard "Parts Sales Order Acknowledgment" controlled the contract at issue. Therefore, they argued, Austral-Pacific's breach of contract claim--which was filed approximately four years after the explosion--was time-barred by the terms of the contract. Based on the briefs of the parties and the affidavits of Australian legal counsel, the district court found that Cooper Industries's warranty terms did not apply in this case. The court held instead that the parties had not reached agreement on the terms of the warranty. Because Australian law allows warranties of merchantability and fitness for specific purpose to be implied in such situations, the court concluded that those warranties were implied in this case. A genuine issue of material fact existed as to whether Cooper Industries had breached those warranties, the court concluded, and therefore summary judgment was inappropriate.
 
 
 19
 The parties' communication concerning the replacement oil bearing housings involved four exchanges. First, when Austral-Pacific found itself in need of a replacement oil bearing compartment, they sent Cooper Industries a telex requesting price and availability of the parts. Next, Cooper Industries promptly sent a response by telex, itemizing the price of each requested part and estimating a delivery time. Third, Austral-Pacific both faxed and mailed their "Purchase Order," a standard form to which the terms of the particular deal were added. On the back of this form were standard warranty terms favorable to Austral-Pacific, including the statement that
 
 
 20
 [t]his form, together with all documents attached hereto or incorporated herein by reference (referred to as the "Purchase Order Documents") constitute the entire terms of order. No terms stated by Seller in accepting or acknowledging this order shall be binding upon the Purchaser unless accepted in writing by Purchaser.
 
 
 21
 Finally, Cooper Industries responded with a "Parts Sales Order Acknowledgement," their own standard form, which confirmed the parts ordered but did not contain the terms of price or delivery date. On the back of this form were also standard warranty terms, different from those listed on the back of Austral-Pacific's form. These terms, not surprisingly, favored Cooper Industries, disclaiming any implied warranties of merchantability and setting a one-year statute of limitations from the time of accrual on any breach of contract claims. No further communications took place, and Cooper Industries proceeded to make and deliver the parts, which Austral-Pacific accepted and installed.
 
 
 22
 Based on the record before us, we agree with the district court's decision to deny Cooper Industries's motion for summary judgment. Each party makes a post hoc argument that their own warranty terms control the contract. Under the facts presented, however, it is clear that no mutual agreement was reached as to terms of warranty. In cases where differing terms are included in standard forms,
 
 
 23
 the battle depends on the shots fired on both sides. There is a concluded contract but the forms vary. The terms and conditions of both parties are to be construed together. If they can be reconciled so as to give a harmonious result, all well and good. If the differences are irreconcilable--so that they are mutually contradictory--then the conflicting terms may have to be scrapped and replaced by a reasonable implication.
 
 
 24
 Butler Machine Tool Co. Ltd. v. Ex-Cell-O Corp. (England) Ltd. (1979) 1 W.L.R. 401 at 405.
 
 
 25
 In this case, no "reasonable bystander" could have understood the exchanges to constitute an agreement on this issue. See Empernall Holdings Pty Ltd. v. Machon Paull Partners Pty Ltd. (1988) 14 N.S.W.L.R. 523 at 535. Therefore, under Australian law, warranties of merchantability and fitness of goods for intended purpose could be implied by the court. See Halsbury's Laws of Australia, p 110-2180. The requirements for finding an implied warranty of fitness for an intended purpose are met in this case because
 
 
 26
 where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required so as to show that the buyer relies on the seller's skill or judgment and the goods are of a description which it is in the course of the seller's business to supply, there is an implied condition that the goods shall be reasonably fit for such purpose.
 
 
 27
 Sale of Goods Act of 1896 (Queensland) § 17(1). Similarly, the requirements for finding a warranty of merchantability exist in this case, because "where goods are bought by description from a seller who deals in goods of that description, ... there is an implied condition that the goods shall be of merchantable quality." Id. at § 17(2).
 
 
 28
 We conclude that, as a matter of law, the contract between Austral-Pacific and Cooper Industries included implied warranties of merchantability and fitness for an intended purpose, not subject to any contractual statute of limitations. Given the existence of these warranties, Cooper Industries has failed to meet its burden of proving that it is entitled to judgment as a matter of law.
 
 
 29
 For the reasons stated above, we REVERSE that part of the district court's judgment ordering dismissal of the complaint, but we AFFIRM the order denying summary judgment in favor of the defendant, Cooper Industries, Inc. The case is REMANDED to permit the plaintiff, Austral-Pacific Fertilizers, Ltd., to respond to the defendant's motion for dismissal, as outlined in this opinion.
 
 
 
 *
 The Hon. Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation