NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0383n.06
Filed: June 27, 2008

No. 07-3404

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ELVERT S. BRISCOE, JR., )
)
*Plaintiff-Appellant*, )
)
v. )
)
TONNESHA S. JACKSON, et al., )
)
*Defendants - Appellees*. )
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

O P I N I O N

BEFORE: BOGGS, Chief Judge; RYAN and COLE, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.** Petitioner-Appellant Elvert S. Briscoe, Jr., a pro se Ohio prisoner, appeals a judgment of the district court dismissing for lack of subject matter jurisdiction the civil rights claims he asserted under 42 U.S.C. §§ 1981, 1983, and 1985. Conducting de novo review, we conclude that the district court correctly applied the abstention doctrine set forth in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and therefore **AFFIRM** the dismissal of Briscoe's complaint.

**I.**

Briscoe alleges that he met Tonnesha Jackson, his former girlfriend and a Defendant-Appellee, in June 1995 and commenced a romantic relationship with her. In November 1995, Jackson informed Briscoe that she was pregnant, and the couple notified their family members of

the pregnancy and of Briscoe's status as the father of the child. On June 18, 1996, Jackson delivered a girl. Thereafter, Briscoe's and Jackson's relationship ended. Briscoe alleges that Jackson moved in with Renaldo Terry, Jackson's stepfather and another Defendant-Appellee, and that Terry prevented Briscoe from calling the house or visiting the baby.

In 1999, upon being convicted of two counts of rape and sentenced to two concurrent terms of life imprisonment, Briscoe was incarcerated at the Grafton Correctional Institute in Lorain County, Ohio. While in prison, Briscoe filed a request with Defendant-Appellee Cuyahoga County Child Support Enforcement Agency ("CSEA"), pursuant to Ohio Revised Code § 3111.22, to establish the paternity of Jackson's child. CSEA conducted genetic testing. Defendant-Appellee Dr. Joy Johnson, Associate Director of Orchid Genescreen, a DNA and paternity-testing facility, determined that Briscoe was not the biological father of Jackson's child because there was an insufficient number of matching alleles. Based on these results, CSEA filed an administrative order certifying the nonexistence of a father-child relationship between Briscoe and Jackson's baby.

On December 20, 2004, Briscoe filed several objections to this administrative order, including a request to conduct a new round of genetic tests because he claimed that the first round was contaminated from Briscoe's use of tobacco, hydrogen-peroxide toothpaste, and consumption of food-borne bacteria. On April 19, 2005, a hearing regarding the administrative order was held in the Juvenile Division of the Cuyahoga County Common Pleas Court. Present at the hearing were Jackson and CSEA, represented by counsel; Briscoe, however, was unable to attend due to his incarceration. At the hearing, Jackson testified that she agreed with the results of the paternity test and that Briscoe had been harassing her, Terry, and their family. The court accordingly entered a no-

contact order and an order affirming the nonexistence of a parent-child relationship between Briscoe and Jackson's baby. Briscoe objected to the court's order and requested the appointment of counsel for the minor child. The court overruled Briscoe's objections and denied his request for the appointment of counsel. Briscoe thereafter appealed to the Ohio Court of Appeals, which affirmed the order of the Common Pleas court. When he attempted to appeal further his case, the Ohio Supreme Court declined to exercise jurisdiction.

Having exhausted his state court remedies, Briscoe filed suit against Defendants-Appellees, Jackson, CSEA, Johnson, and Terry, in the United States District Court for the Northern District of Ohio on November 14, 2006, raising multiple civil rights claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. Specifically, Briscoe asserted that he was improperly denied his parental rights without adequate procedural safeguards, that the decision of the Ohio juvenile court was erroneous, that Ohio Revised Code §§ 3111.07(A) and 3111.09 are unconstitutional, that Jackson and Terry entered into a conspiracy to violate his civil rights, that the decision of the juvenile court denied him equal protection of the laws, and that the state courts should have permitted him to obtain further evidence regarding his paternity. In a memorandum order, the district court dismissed Briscoe's complaint for lack of subject matter jurisdiction, under 28 U.S.C. § 1915(e) and as established under the *Rooker-Feldman* abstention doctrine. Briscoe filed a timely notice of appeal with this Court.

### III. DISCUSSION

We conduct our review of the district court's dismissal pursuant to 28 U.S.C. § 1915(e) under a de novo standard. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997). Applying this de novo standard, we are of the view that the district court properly dismissed Briscoe's civil rights

claims for lack of subject matter jurisdiction as established by the *Rooker-Feldman* doctrine.

*Rooker*, 263 U.S. at 413, and *Feldman*, 460 U.S. at 462. *Rooker* and *Feldman*

> exhibit the limited circumstances in which [the Supreme Court's] appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.,* § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity).

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005). The doctrine serves

to divest district courts of subject matter jurisdiction when "the losing party in state court filed suit

in federal court after the state proceedings ended, complaining of an injury caused by the state-court

judgment and seeking review and rejection of that judgment." *Exxon Mobil*, 544 U.S. at 291; *see*

*also Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 605-06 (6th Cir. 2007). The

*Rooker-Feldman* doctrine, a combination of abstention and res judicata considerations, thus reflects

the long-standing principle that 28 U.S.C. § 1257 amounts to a grant of exclusive appellate

jurisdiction to the Supreme Court. *Exxon Mobil*, 544 U.S. at 292.

Accordingly, the district court's dismissal of Briscoe's complaint for lack of subject matter

jurisdiction evinces the proper respect for § 1257's status as a grant of original Supreme Court

jurisdiction. To be sure, § 1257 does not withhold jurisdiction from the district court "simply

because a party attempts to litigate in federal court a matter previously litigated in state court. If a

federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that

a state court has reached in a case to which he was a party . . . , then there is jurisdiction. . . .'"

*Exxon Mobil*, 544 U.S. at 293 (internal citations omitted). Briscoe's eight-count complaint, however,

does not submit claims independent of those litigated in the Ohio state courts. Rather, Briscoe simply seeks to use the statutory skeleton of federal civil rights law to appeal to the district court and ultimately overturn the decision of the state courts. This is the precise type of state-court reversal prohibited by the *Rooker-Feldman* doctrine.

Moreover, even if we were to hold that Briscoe's civil rights claims present an independent basis for federal court review, Briscoe has failed to satisfy the statutory requirements of §§ 1981, 1983, and 1985. Section 1981 protects the rights of all people in the United States "to make and enforce contracts, to sue, be parties, give evidence, and to [enjoy] the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981(a). The scope of protection encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To set forth a viable claim under § 1981 in a non-employment context, a plaintiff must demonstrate that:

> (1) plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). Briscoe's complaint falters on the third prong, because, at most, he makes cursory allegations, but fails to establish, that he was denied contractual rights on the basis of his race.

With respect to Briscoe's § 1983 claim, his cause of action against Jackson, Johnson, and

Terry must necessarily fail, because they are private actors whose conduct cannot be classified as occurring "under color of state law." *See United States v. Classic*, 313 U.S. 299, 326 (1941) (explaining that for purposes of a § 1983 suit, a person acts under color of state law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law").

Regarding Defendant-Appellee CSEA, even assuming *arguendo* that the agency qualifies as a state actor for purposes of § 1983, it is "well-settled" that civil rights claims "must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). While mindful of the lenity we are to grant Briscoe as a pro se party, Briscoe has failed to plead any facts that would demonstrate that CSEA engaged in a § 1983 violation. *See Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006) (stating that for pro se litigants, "pleadings are held to a less stringent standard than those prepared by an attorney" and are construed liberally in the litigant's favor).

Lastly, regarding Briscoe's § 1985 claim, he is required to show "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Here, Briscoe has set forth "nothing more than the conclusory allegation that defendants acted in concert and, without more, failed to allege a

sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged

conspirators in a conspiracy to deprive him of his civil rights." *Amadasu v. The Christ Hosp.*, 514

F.3d 504, 507 (6th Cir. 2008). Thus, we conclude that Briscoe failed to establish a claim under §

1985 as well.

## IV. CONCLUSION

For the preceding reasons, we **AFFIRM** the judgment of the district court.