**Wayne D. GIBBS, Plaintiff,**

v.

**MONTGOMERY COUNTY AGRICULTURAL SOCIETY, Defendant.**

No. C–3–99–342.

United States District Court, S.D. Ohio, Western Division.

March 12, 2001.

III BASED ON DEFENDANT'S ALLEGED RETALIATION AGAINST PLAINTIFF ARE DISMISSED, WITHOUT PREJUDICE TO REFILING IN STATE COURT OF COMPETENT JURISDICTION; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF ON COUNT I OF PLAINTIFF'S COMPLAINT AND ON COUNTS II AND III, INSOFAR AS THOSE COUNTS ARE BASED ON PLAINTIFF'S FAILURE TO RECEIVE OVERTIME PAY; TERMINATION ENTRY.

RICE, Chief Judge.

This litigation stems from Plaintiff Wayne D. Gibbs' failure to receive overtime compensation while employed as an Assistant Grounds Superintendent by Defendant Montgomery County Agricultural Society. In a three-Count Complaint, Gibbs first alleges that his failure to receive overtime pay violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Count I). He next alleges both that his failure to receive overtime pay violated Ohio Revised Code Chapter 4111, and that the Defendant violated Chapter 4111 by retaliating against him after he raised the issue of overtime pay (Count II). Finally, Gibbs alleges that the Defendant violated Ohio public policy by failing to pay him overtime compensation and by threatening to fire him after he raised the issue of overtime pay (Count III). Pending before the Court is a Motion for Summary Judgment (Doc. # 13) filed by the Defendant.

John Randolph Folkerth, Jr., Dayton, OH, for plaintiff.

John Robert Doll, Logothetis Pence and Doll, Dayton, OH, for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 13), INSOFAR AS SAID MOTION IS DIRECTED TOWARD COUNT I OF PLAINTIFF'S COMPLAINT AND STATE–LAW CLAIMS IN COUNTS II AND III BASED ON PLAINTIFF'S FAILURE TO RECEIVE OVERTIME PAY; STATE–LAW CLAIMS IN COUNTS II AND

*I. Factual Background* [1]

The Defendant hired Gibbs in 1989 as an hourly maintenance employee. (Doc. # 14,

---

1. For purposes of ruling on the Defendant's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiff, who is the non-moving party. In its substantive analysis, *infra*, the Court will recite additional pertinent facts, again construing those facts and all reasonable inferences most strongly in favor of the Plaintiff.

Gibbs affidavit at ¶ 1). In that capacity, his responsibilities included "maintenance and repair of the facilities located at the [Montgomery County] Fairgrounds." (*Id.*). He also assisted with "the set up, clean up, and tear down of shows appearing at the Fairgrounds...." (*Id.*). In November, 1991, the Defendant gave Gibbs the title of Assistant Grounds Superintendent and made him a salaried employee. (*Id.* at ¶ 3). Thereafter, his duties remained essentially the same, but he worked longer hours and did not receive overtime pay. (*Id.* at ¶ 4–5). In June, 1999, Gibbs raised the issue of overtime pay during a meeting of the Defendant's Board of Directors. (*Id.* at ¶ 6). In response, a Board member told Gibbs that he was not entitled to overtime compensation, regardless of how many hours he worked. The Board member also told him that if he "did not like it, [he] could find another job." (*Id.*). Approximately two weeks later, the Defendant's President, Donald Aukerman, approached Gibbs during work hours and stated that "instead of going on vacation, [Gibbs] should be looking for another job." (*Id.* at ¶ 7). Gibbs perceived this statement as a threat, and he inferred from it that he would be fired if he did not resign. (*Id.*). As a result, Gibbs resigned from his employment with the Defendant, effective July 3, 1999. (*Id.*).

## II. *Summary Judgment Standard*

Before turning to the Plaintiffs' Motion for Summary Judgment (Doc. # 17), the Court will first set forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987))). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judg-

ment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also, L.S. Heath & Son, Inc. v. AT & T Information Systems*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins*, 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis of Defendant's Motion for Summary Judgment (Doc. # 13)*

The Defendant seeks summary judgment on each of the three Counts in Gibbs' Complaint. As a means of analysis, the Court will address each Count separately.

### A. *Count I: Failure to Pay Overtime in Violation of Fair Labor Standards Act*

In Count I of his Complaint, Gibbs alleges that the Defendant violated the FLSA by failing to pay him overtime compensation while he was employed as the Assistant Grounds Superintendent. The Defendant seeks summary judgment on this Count, arguing that Gibbs was not

entitled to overtime pay under the FLSA. Although the Act generally requires employers to pay overtime compensation, it exempts "any employee employed by an establishment which is an amusement or recreational establishment...." *See* 29 U.S.C. § 213(a)(3). In a somewhat circular fashion, "amusement or recreational establishments" have been defined as "establishments frequented by the public for its amusement or recreation." *See* 29 C.F.R. § 779.385. In any event, an "amusement or recreational establishment" qualifies for the exemption provided by 29 U.S.C. § 213(a)(3) if "(A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 ⅓ percentum of its average receipts for the other six months of such year...." *See* 29 U.S.C. § 213(a)(3).

In accordance with the foregoing requirements, the Defendant must make two showings in order to invoke the exemption provided by § 213(a)(3). *First,* it must demonstrate that it qualifies as an "amusement or recreational establishment." *Second,* it must show either (1) that it does not operate for more than seven months out of the year *or* (2) that its average receipts for any six months of the relevant calendar year were not more than 33 ⅓ percent of its average receipts for the other six months of that year. *Id.; see also Hamilton v. Tulsa County Public Facilities Authority,* 85 F.3d 494, 497 (10th Cir. 1996).

In the present case, Gibbs concedes the Defendant's ability to meet the second requirement. (*See* Doc. # 14 at 2 n. 1). Indeed, the Defendant has presented uncontroverted evidence demonstrating that its average receipts for the six slowest months of the relevant year were less than 33 ⅓ percent of its average receipts for the six busiest months of that year. (Doc. # 13, Bullen affidavit at ¶ 11 and Exh. B). In other words, the record reflects that the Defendant did more than two-thirds of its business in its six busiest months, and Gibbs makes no argument to the contrary.

With respect to Count I, the lone disputed issue is whether the Defendant qualifies as an "amusement or recreational establishment." As noted above, "amusement or recreational establishments" have been defined as "establishments frequented by the public for its amusement or recreation." *See* 29 C.F.R. § 779.385. The Defendant argues that it meets this definition, as a matter of law. In support, it relies on two cases, *Chaney v. Clark County Agricultural Society, Inc.,* 90 Ohio App.3d 421, 629 N.E.2d 513 (2nd Dist. 1993), and *Hamilton v. Tulsa County Public Facilities Authority,* 85 F.3d 494 (10th Cir.1996).

In *Chaney,* the plaintiff, a former employee of the Clark County Agricultural Society, brought an FLSA action to recover unpaid overtime compensation. The Court of Common Pleas of Clark County, Ohio, entered summary judgment for the employer, and the Ohio Second District Court of Appeals affirmed. In so doing, the appellate court relied upon 29 U.S.C. § 213(a)(3), the same provision cited by the Defendant in the present case. In finding the Agricultural Society exempt from the FLSA's overtime requirements, the *Chaney* court noted that the Society existed for the purpose of holding an annual county fair and maintaining the fairgrounds. *Chaney,* 629 N.E.2d at 515–516. The court then recognized that such activities traditionally have fit within the scope of the § 213(a)(3) exemption. *Id.* 629 N.E.2d at 516. In reaching this conclusion, the *Chaney* court quoted with approval the following language from a Department of

Labor Wage and Hour Division handbook:

> "*State and county fairs.* The activities of the usual State or county fair are analogous to those of an amusement park, carnival, or circus, i.e., it has rides, exhibitions, side shows, etc., and its revenues are derived principally from selling admissions to such events. State and county fairs may thus qualify for the Section [2]13(a)(3) exemption if the tests are met."

*Id.* at 516–517.

In affirming the lower court's judgment, the *Chaney* court also rejected the appellant's argument that the § 213(a)(3) exemption did not apply because the Agricultural Society rented the county fairgrounds facilities and buildings to numerous non-profit and for-profit organizations. The appellate court reasoned that "the rental by an exempt organization of its facilities to a nonexempt business does not disqualify the exempt institution from the exemption of Section 213(a)(3)." *Id.* at 517 (citing Wage & Hour Opinion Letter No. 1525(WH–472), Oct. 11, 1978, CCH Labor Law Rep., paragraph 31,256, discussed at 88 A.L.R. Fed. 880, 901–902 (1988)).

In *Hamilton v. Tulsa County Public Facilities Authority*, 85 F.3d 494 (10th Cir.1996), the second case relied upon by the Defendant, the plaintiffs were former maintenance and security employees of the Tulsa County Public Facilities Authority ("TCPFA"), a public trust that managed the Tulsa County Fairgrounds. The plaintiffs in *Hamilton* brought an action against TCPFA under the FLSA to recover unpaid overtime compensation. The district court entered summary judgment in favor of the defendant, and the plaintiffs appealed. On review, the Tenth Circuit affirmed,

concluding that TCPFA fit within the exemption provided by 29 U.S.C. § 213(a)(3). In reaching this conclusion, the court noted that the primary purpose of the TCPFA was to "establish, provide, maintain and promote recreational centers, agricultural and industrial expositions, fairs, trade shows and other recreational facilities and activities." *Id.* at 496.

The *Hamilton* court also rejected the appellants' argument that § 213(a)(3) did not apply because the type of work that they performed "was not traditional amusement or recreational activit[y]." *Id.* at 497. In relevant part, the court reasoned:

> By its own terms, § 213(a)(3) of the FLSA exempts employees employed by amusement or recreational establishments; it does not exempt employees on the basis of the work performed at an amusement or recreational establishment. It is the character of the revenue producing activity which affords the employer the protection of the exemption.... Since TCPFA is in the business of providing "amusement and recreation" to the public and it has satisfied the requirements of § 213(a)(3)(B),[2] its employees are exempt from the requirement of the overtime provisions of the FLSA....

*Id.*

In *Hamilton*, the Tenth Circuit also rejected the appellants' argument that businesses leasing space on fairgrounds property constituted separate "establishments" for purposes of the FLSA exemption. The appellants raised this argument because they performed "central maintenance work" at the different leased business locations on the property. According to the appellants, this fact demonstrated that

**2.** As noted, *supra,* Gibbs does not dispute the Defendant's ability to meet the requirements of § 213(a)(3)(B) which addresses the revenue that an exempt employer may generate in any six months of the relevant year.

they were entitled to overtime pay, because only *some* of the "establishments" (i.e., businesses) where they performed maintenance were exempt under § 213(a)(3) as "amusement or recreational establishments." *Id.* at 497. In rejecting the appellants' argument, the *Hamilton* court reasoned as follows:

> Appellants rely on *Brennan v. Yellowstone Park Lines, Inc.,* 478 F.2d 285 (10th Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 147 (1973), in which we held that the various facilities in Yellowstone National Park were separate and distinct establishments and not a single integrated establishment and that, based on the agreements of the parties, the central employees who worked for several or all of the facilities were not exempt. Appellants' reliance is misplaced. Before we reach the issue in *Yellowstone Park* of whether an employer's individual operations are a single integrated establishment or separate and distinct establishments, there must be a common owner and/or operator.
>
> Unlike the employers in *Yellowstone Park* who owned and operated all of the individual facilities in Yellowstone National Park, TCPFA does not own or operate the other businesses located on the fairgrounds; it simply leases the property to them. Therefore, the issue is solely whether TCPFA is an amusement or recreational establishment in and of itself. Whether the other businesses located on the fairground may or may not be amusement or recreational establishments entitled to the exemption under § 213(a)(3) is irrelevant.
>
> After reviewing the record, we conclude that TCPFA satisfies the requirements of the amusement or recreational establishment exemption. First, TCPFA manages the fairgrounds as a distinct physical place of business. Second, it is undisputed that TCPFA's primary purpose is to establish, provide, maintain, and promote recreational centers, agricultural and industrial expositions, fairs, trade shows, and other recreational facilities and activities. Therefore, TCPFA is an amusement or recreational establishment within the meaning of § 213(a)(3) and its employees are exempt from the FLSA.

*Id.* at 497–498 (footnote omitted).

■ In light of the foregoing case law, the Defendant insists that it qualifies as an "amusement or recreational establishment," as a matter of law. In support, the Defendant relies largely on an affidavit from Daniel R. Bullen, its Executive Secretary, who avers that "the Society's main activities are the management of the Montgomery County Fairgrounds—including leasing it for various recreational and other activities—and the operation of the Montgomery County Fair, held each September." (Doc. # 13, Bullen affidavit at ¶ 2).

In response, Gibbs raises an argument similar to the one rejected by the Tenth Circuit in *Hamilton.* He contends that the Montgomery County Agricultural Society, as a whole, constitutes an "enterprise" that consists of numerous "establishments," some of which are exempt under 29 U.S.C. § 213(a)(3) and some of which are not. Given that he performed maintenance duties at *all* of those individual "establishments" (*see* Doc. # 14, Gibbs affidavit at ¶ 8), Gibbs insists that he is entitled to overtime pay. (*Id.* at 1–5). In support, he stresses that the Defendant leases space at the Montgomery County Fairgrounds to various businesses. He also notes that the Defendant leases portions of that property for trade shows. Finally, he notes that the Defendant leases parking space to the Miami Valley Hospital and also leases space in a horse stable to individuals who wish to board horses. (*Id.* at 3 and Gibbs affidavit at ¶ 8–9). According

to Gibbs, he performed "routine maintenance and repair" in all of these leased areas. (*Id.* at 4 and Gibbs affidavit at ¶ 10). As a result, he contends that the FLSA's overtime provisions apply, as not all of the leased areas were "amusement or recreational" in nature.

Gibbs recognizes, however, that his argument is contrary to both *Chaney* and *Hamilton, supra.* Nevertheless, he argues that the Tenth Circuit's ruling in *Hamilton* should not be followed for three reasons. *First,* he contends that the *Hamilton* court did "not indicate whether the employees in question performed services at the presumably non-exempt facilities leased by the enterprise to the businesses." (Doc. # 14 at 4). *Second,* he suggests that the Tenth Circuit's ruling conflicts with administrative rulings and regulations which indicate "that common ownership is not a requirement for an enterprise." (*Id.*). *Third,* he notes that the Defendant operates a horse stable, which he contends does not qualify as an "amusement or recreational establishment," even under the Tenth Circuit's reasoning. *Finally,* contrary to both *Hamilton* and *Chaney,* Gibbs contends that this Court should focus on the nature of his work, rather than the principal activities of the Defendant, when determining the applicability of the § 213(a)(3) exemption.

Upon review, the Court rejects each of the foregoing arguments. Contrary to Gibbs' first argument, the Tenth Circuit *did* recognize that the plaintiff employees performed work at the allegedly non-exempt leased facilities. *See Hamilton,* 85 F.3d at 497 (acknowledging that the plaintiffs "were central maintenance employees who served more than one 'establishment' on the fairgrounds"). The Tenth Circuit simply found this fact to be immaterial.

With respect to Gibbs' second argument, the Court cannot agree that the Tenth Circuit's holding is contrary to any administrative rulings and regulations. In support of his argument, Gibbs relies upon an Opinion Letter from the Department of Labor Wage and Hour Administrator and two sections of the Code of Federal Regulations, 29 C.F.R. § 779.21 and § 779.203. (Doc. # 14 at 4). The Opinion Letter at issue addresses the applicability of § 213(a)(3) to a single "firm" (a summer resort) that operated numerous businesses, including a zoo, a doll house, a museum, a riding stable, a miniature golf course, a hotel, a chuck wagon, a teddy bear barn, an ice cream parlor, two souvenir shops, a general store, a leather shop, a novelty shop, a campground and a trout pond. *See* Opinion Letter No. 1522 (WH–469), Sept. 12, 1978 (attached to Doc. # 14). It appears from the Opinion Letter that the summer resort "enterprise" *did* own all of the foregoing "establishments." Consequently, the Opinion Letter does not in any way conflict with the Tenth Circuit's reasoning in *Hamilton.* Nor are 29 C.F.R. § 779.21 and § 779.203 contrary to *Hamilton* 's central holding that the plaintiff therein was not entitled to overtime pay. The former provision defines an "enterprise" as, inter alia, "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units...." Although the foregoing language suggests that separate owners may unite to operate one "enterprise," this will occur only when "related activities" are performed through "unified operation or common control" and "for a common business purpose." *See* 29 C.F.R. § 779.21(a). In neither *Hamilton* nor in the present case, however, did the Defendant unite with the entities or individuals that leased space on fairgrounds property in order to perform "related activities"

through "unified operation or control" and "for a common business purpose." To the contrary, in *Hamilton*, as in the present case, the Defendant only established a landlord-tenant relationship with the businesses and individuals leasing space on the property.

The second provision cited by Gibbs, 29 C.F.R. § 779.203, merely defines and distinguishes the terms "enterprise," "establishment" and "employer." It provides as follows:

> The coverage, exemption and other provisions of the [FLSA] depend, in part, on the scope of the terms *employer, establishment,* or *enterprise* .... The term *employer* ... includes, with certain stated exceptions, any person acting directly or indirectly in the interest of an employer in relation to an employee.... The term *establishment* means *a distinct physical place of business* rather than *an entire business or enterprise.* ... The term *enterprise* ... is roughly descriptive of a business rather than of an establishment or of an employer although on occasion the three may coincide. The enterprise may consist of a single establishment (see § 779.204(a)) which may be operated by one or more employers; or it may be composed of a number of establishments which may be operated by one or more employers (see § 779.204(b)).

29 C.F.R. § 779.203.

Nothing in the foregoing language suggests that Gibbs was anything other than an employee of Defendant Montgomery County Agricultural Society, a § 213(a)(3) exempt entity that maintained the Montgomery County Fairgrounds, conducted the annual Montgomery County Fair and also leased space to businesses and individuals. More importantly, nothing in § 779.203 suggests that the Defendant in the present case (or the defendant in *Hamilton*) formed an "enterprise," consisting of both exempt and non-exempt "establishments," simply by leasing portions of fairgrounds property to businesses and individuals. Therefore, the fact that Gibbs may have done some maintenance work at the leased areas does not mean that he was employed by a separate, non-exempt "establishment."

With respect to Gibbs' third argument, the Court rejects the proposition that the Defendant's horse stable constitutes a separate, non-exempt "establishment," merely because the Defendant leases some stable space for the boarding of horses. Like the other areas of the Montgomery County Fairgrounds, the Defendant uses the stable during the annual Montgomery County Fair. (Doc. # 15, Bullen affidavit at ¶ 2). In particular, the stable is used to board the horses that race during the fair. (*Id.*). The Defendant does not operate the stable as a separate business, and the stable revenues are included in the Defendant's overall receipts. (*Id.* at ¶ 2–3). In addition, the stable is located on Montgomery County Fairgrounds property, and it is administered by the Defendant, just like the other buildings and facilities on the premises. (*Id.*). As a result, the stable is indistinguishable from the other buildings on the property, insofar as parts of the stable and parts of the other buildings are leased by the Defendant. As noted, *supra,* the mere leasing of such property does not render the stable or any other leased portion of the property a separate "establishment" for purposes of the § 213(a)(3) exemption. *See, e.g., Chaney,* 629 N.E.2d at 517; *Hamilton,* 85 F.3d at 497–498.

■ Finally, the Court rejects Gibbs' argument that it should focus on the work that he performed, rather than the principal activities of the Defendant, when determining the applicability of the § 213(a)(3) exemption. In support of this proposition, Gibbs relies upon *Brennan v.*

*Six Flags Over Georgia, Ltd.,* 474 F.2d 18 (5th Cir.1973). Therein, the Fifth Circuit reasoned that "the nature of the [employee's] work is what gives rise to the need for an exemption; the exemption is not a subsidy accorded to an employer because of his principal activities." *Id.* at 19. Although *Six Flags* unquestionably supports Gibbs' position, the Court notes that the Fifth Circuit reached a contrary conclusion just one year later in *Brennan v. Texas City Dike & Marina, Inc.,* 492 F.2d 1115, 1119 (5th Cir.1974), concluding that an employer's "principal activity should be determinative of [its] eligibility for an exemption." Notably, the Fifth Circuit's decision in *Texas City Dike* is consistent with both the Tenth Circuit's later ruling in *Hamilton,* 85 F.3d at 497, and, more importantly, the position taken by the Sixth Circuit in *Brennan v. Southern Productions, Inc.,* 513 F.2d 740, 746–747 (6th Cir.1975) (looking to the "principal activity of the [employer]" when determining the applicability of the § 213(a)(3) exemption). Consequently, the Court rejects Gibbs' invitation to consider the work that he actually performed, as opposed to the Defendant's principal activities, when determining the applicability of the FLSA overtime exemption at issue.

As noted, *supra,* the uncontroverted evidence establishes that the Defendant's principal "activities are the management of the Montgomery County Fairgrounds—including leasing it for various recreational and other activities—and the operation of the Montgomery County Fair, held each September." (Doc. # 13, Bullen affidavit at ¶ 2). These activities demonstrate that Gibbs was "employed by an establishment which is an amusement or recreational establishment," as required by 29 U.S.C. § 213(a)(3). Accordingly, based on the reasoning and citation of authority set forth above, the Court concludes that the § 213(a)(3) exemption applies herein, and

Gibbs is not entitled to overtime compensation, as a matter of law. The Defendant's Motion for Summary Judgment will be sustained, insofar as it relates to Count I of Gibbs' Complaint.

**B.** *Count II: Failure to Pay Overtime/Retaliation in Violation of Ohio Revised Code*

In Count II of his Complaint, Gibbs asserts two claims. *First,* he alleges that the Defendant violated Ohio Revised Code Chapter 4111 by failing to pay him overtime compensation while he was employed as the Assistant Grounds Superintendent. *Second,* he alleges that the Defendant violated Chapter 4111 by retaliating against him after he questioned his entitlement to overtime pay.

The Defendant seeks summary judgment on both of the foregoing claims. With respect to the former claim, the Defendant properly notes that Gibbs is not entitled to overtime pay under Ohio Revised Code Chapter 4111 for the reasons set forth, *supra,* in the Court's analysis of Count I. Gibbs himself recognizes that Ohio Revised Code § 4111.03, the provision under which his state-law claim arises, incorporates the exemptions provided by the FLSA. *See* Ohio Revised Code § 4111.03(A) (obligating employers to pay overtime compensation "in the manner and methods provided in and subject to the exemptions of" the FLSA). As a result, Gibbs concedes that his state-law overtime compensation claim necessarily fails if his FLSA claim fails. (*See* Doc. # 14 at 5 n. 2). Given that the Court has found the Defendant entitled to summary judgment on Gibbs' FLSA claim, the Defendant is also entitled to summary judgment on Count II, insofar as it asserts a claim for overtime compensation under state law.

As noted above, however, Count II also alleges that the Defendant retaliated against Gibbs for questioning his entitle-

ment to overtime compensation. (Doc. # 1 at ¶ 13, 18). In particular, Gibbs alleges that when he complained about not receiving overtime pay, "he was informed that his job was at risk." (*Id.* at ¶ 18). Gibbs also alleges that he approached the Defendant's Board of Directors about the issue of overtime pay in June, 1999, "and was told that he better find a new job." (*Id.*). Gibbs subsequently resigned from his employment. (*Id.*).

In its Motion for Summary Judgment, the Defendant contends that the purported "threats" at issue do not support a cause of action for retaliation, as a matter of law. In support, the Defendant contends that the "threatening" remarks at issue are, at most, ambiguous statements made by an individual who lacked the authority to discipline Gibbs. Furthermore, the Defendant notes that Gibbs resigned from his job as Assistant Grounds Superintendent. As a result, the Defendant argues that his retaliation claim fails, as a matter of law, because he did not suffer an adverse employment action.

Upon review, the Court declines to exercise supplemental jurisdiction over Count II of Gibbs' Complaint, insofar as it sets forth a state-law claim of retaliation. Whether the statement or statements at issue constitute "threats," and whether such "threats," standing alone, are sufficient to constitute actionable retaliation under Ohio Revised Chapter 4111 are questions that properly may be reserved for Ohio's courts to answer in the first instance.[3] In the exercise of its sound discretion, the Court declines to assert supplemental jurisdiction over Gibbs' state-law retaliation claim.[4] It is well set-

tled that a district court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state-law claims generally should be dismissed as well. *Id.; see also Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992).

### C. *Count III: Failure to Pay Overtime/Retaliation in Violation of Ohio Public Policy*

In Count III of his Complaint, Gibbs asserts a state-law tort claim for violation of public policy. In particular, he alleges that the Defendant violated Ohio public policy by failing to pay him overtime compensation and by threatening to terminate his employment when he questioned his entitlement to overtime pay.

The Defendant seeks summary judgment on Count III, arguing that it did not violate Ohio public policy, as a matter of law, for two reasons. *First*, with respect to the issue of overtime compensation, the Defendant argues that Gibbs was not entitled to such pay due to the exemption provided by 29 U.S.C. § 213(a)(3) and incorporated into Ohio Revised Code Chapter 4111. As a result, the Defendant contends that it did not violate Ohio public policy, as a matter of law, by failing to pay Gibbs overtime compensation. *Second*, with respect to the issue of "threats," the Defendant contends that mere threats fall outside the purview of Ohio's public policy tort. The Defendant argues that only a

---

**3.** In its Memorandum, the Defendant recognizes the absence of Ohio case law addressing the anti-retaliation provision of Ohio Revised Code Chapter 4111, the statute governing overtime pay. (Doc. # 13 at 8).

**4.** The Court has exercised supplemental jurisdiction over Gibbs' state-law overtime compensation claim only because that claim is identical to his FLSA claim. In contrast, his state-law retaliation claim raises new issues that the Court has not addressed in its analysis of his FLSA claim.

wrongful discharge or some other adverse employment action will support a tort claim grounded in Ohio public policy. Therefore, the Defendant insists that it did not violate Ohio public policy, as a matter of law, merely by threatening to terminate Gibbs' employment (assuming, arguendo, that such "threats" were made).

Upon review, the Court concludes that the Defendant is entitled to summary judgment on Count III, insofar as it asserts a public policy claim based on Gibbs' failure to receive overtime pay. In short, the Court agrees that the Defendant could not have violated Ohio public policy, as a matter of law, given that Gibbs was not entitled to such pay under the FLSA or the analogous provision of Ohio Revised Code Chapter 4111.

With respect to Gibbs' public policy claim grounded in the Defendant's alleged threats against him, however, the Court once again declines to exercise supplemental jurisdiction. In its Motion for Summary Judgment, the Defendant acknowledges that no Ohio court has specifically addressed whether mere threats that *are not* followed by an adverse employment action violate that state's public policy. (*See* Doc. #13 at 13). Given that Gibbs' public policy claim based on perceived threats against him appears to raise a novel issue of state law, the Court declines to exercise supplemental jurisdiction over it.[5] *See Saglioccolo*, 112 F.3d at 233; *Taylor*, 973 F.2d at 1287.

IV. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Defendant's Motion for Summary Judgment (Doc. #13), is sustained, insofar as the Motion is directed toward Count I of the Plaintiff's Complaint. The Defendant's Motion for Summary Judgment (Doc. #13) is also sustained, insofar as the Motion is directed toward those state-law claims in Counts II and III that are based on the Plaintiff's failure to receive overtime pay. The state-law claims in Counts II and III that are based on the Defendant's alleged retaliatory threats against the Plaintiff are dismissed, without prejudice to refiling in a state court of competent jurisdiction.

Judgment will be entered in favor of the Defendant and against the Plaintiff on Count I of the Plaintiff's Complaint and on Counts II and III, insofar as those Counts are based on the Plaintiff's failure to receive overtime pay.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

5. Once again, the Court has exercised supplemental jurisdiction over Gibbs' public policy claim, insofar as it is based on his failure to receive overtime pay, only because the Court's FLSA analysis conclusively establishes the Defendant's entitlement to summary judgment on the overtime-related public policy claim.